RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 01/14/10
BY ___

United States District Court
Western District of Louisiana

Percy Anderson
　　Plaintiff

versus

Tim Wilkinson, Warden
Dr. Pacho
Mona Heyse
John D. Ferguson
　　Defendants

1:10-CV-0063
SEC P

Complaint

Jury Trial Demand

## Pliminary Statement

This is a civil right action filed by Percy Anderson, a state prisoner for damages and injunctive relief under 42 U.S.C. § 1983, alleging denial of medical treatment and being deliberate indifference in violation of the United States Constitution, and denial of a liberty interest.

## Jurisdiction

1. This Court has jurisdiction over plaintiffs' claim of violation of federal constitutional rights

1

Under 42 U.S.C. §§ 1331(a) and 1343. And a violation of plaintiff rights under XIV amendment denial of due process.

## Parties

2. The plaintiff, Percy Anderson, was incarcerated at Winn Correctional Center, 560 Gumspring Rd Winnfield, La 71483-1260, during the events described in this Complaint.

3. Defendant, Tim Wilkinson, is the Warden at Winn Correctional Center, 560 Gumspring Rd. Winnfield, La. 71483-1260. He is sued in his individual and official capacities.

4. Defendant, Dr. Pacho, is employeed at Winn Correctional Center, 560 Gumspring Rd. Winnfield, La. 71483-1260. He is being sued in his individual and official capacities.

5. Mona Heyse, is the Quality Assurance Manager, at Winn Correctional Center, 560 Gumspring Rd. Winnfield, La. 71483-1260

6. Defendant, John D. Ferguson is the president and Chief Executive officer of Corrections of America, 10 Burton Hills Blvd. Nashville, Tennessee 37215. He is sued in his individual and official capacities.

## Facts

7. Around June of 2009, my leg started hurting and swelling up. I went to the infirmary about the hurting and swelling.

8. Dr. Pacho looked at the swelling and diagnosed it as fluid.

9. In June of 2009 the swelling in my leg grew progressively worse.

10. Around Mid July I went to pill call, barley walking.

11. Nurse Jones asked me what was the problem and why was I barley walking. I pulled off my shoe and she saw the swelling in my leg and foot and she asked me why I haven't came to the infirmary.

12. I told Nurse Jones what Dr. Pacho told me that it was just fluid and order me Motrin and fluid pill.

13. Nurse Jones filled out a sick call slip for me to have my leg examine and took it to the infirmary herself.

14. Nurse Wood seen the sick call and called me to the infirmary the same day.

15. Dr. Pacho saw the swelling in my foot had gotten worse and gave me more fluid pills and sent me back to the unit.

16. A week later my leg and foot had gotte bigger. I showed it to Nurse Jones again when I went to pill call and she told me to have a seat until she finished pill call.

17. She stated I needed to go to the hospital for ex-rays and blood work to find out why my leg and foot was continuing swelling.

18. Dr. Pacho told Nurse Jones to give me a lace shot and kept me over night at the infirmary and released me the next day.

18. Around July 22, 2009, the C/O called instant, they asked me if I was going to get my instant, I told them I could not walk.

19. Ms. Tripplet, Ms. Coleman and Unit manager Mrs. Hardwell came to see what the problem was.

20. I was asked to take off my sock and shoe, after taking off my shoe, Mrs. Hardwell, Ms. Coleman and Ms. Tripplet saw black liquid oozing out of my feet with an extremely strong odor.

21. Mrs. Hardwell called medical immediately, once in the infirmary, I was transferred to LSU medical Center immediately.

22. Once arriving at LSU medical Center the doctor looked at my foot and said four

4

of my toes had to be amputed.

23. After four of my toes had been amputated, doctor, John Doe, said part of my leg was affected with gangrene, he stated part of my leg had to be amputated as well.

24. Dr. John Doe, at LSU asked me why I had not come to the hospital sooner because my leg could have been saved.

25. Dr. John Doe, said that if I would have waited another day or two I would have been dead.

26. Dr. Pacho was deliberate indifference toward my medical condition by assuming what the problem is and not examining plaintiff.

### Denial of Adequate Medical Care

27. Around June of 2009, my leg had swollen up and started hurting, Dr. Pacho failed to examine plaintiff or take ex-rays.

28. About a week later, after Nurse Jones saw that the swelling was not going down she submitted a sick call form on my behalf.

29. Since then, plaintiff has made numerous trips to the infirmary for the swelling of my foot and leg.

5.

30. Dr. Pacho is reponsible for arranging for specialized care outside the prison after examination if needed.

31. After several weeks, plaintiff had not received no ex-rays or blood work.

32. During this time plaintiff was in great pain and he was barely walking during this time.

33. On information and belief, plaintiff was led to believe that the swelling in his leg was not fluid.

34. After plaintiff was unable to move, security witnessed black liquid oozing from his foot.

35. Because Dr. Pacho was deliberate indifferent toward my medical need, plaintiff is now faced with a permenent disability.

## Denial of A Liberty Interest

36. Department Regulation no. B-05-005, (5) states it is the secretary's policy that all adult inmates, juvenile offenders and employees have reasonable access to and comply with the Department's "Administrative Remedy Procedure" through which an adult inmate or juvenile offender may seek formal review of a complaint relating to most aspects of his incarceration

37. Department Regulation no. B-05-005, clearly

6

states that if a request is rejected, it must be for one of the following reason, see Dept. Reg. B-05-005, "Procedure".

38. On information and belief, when a prisoner files a grievance, the grievance staff calls the matter to the attention of those individuals responsible for the matter that the grievance concerns.

39. On September 29, 2009, plaintiff filed a grievance against Dr. Pacho, charging him with being deliberate indifference.

40. On October 1, 2009 Ms. Heyse, the Quality Assurance Manger, rejected plaintiff grievance because it was not written in his handwriting.

41. Ms. Hyese arbitrary and capricious rejected plaintiff ARP.

42. Department Regulation No. B-05-005 clearly stated that the administration should not prevent or discourage an inmate from communicating with the warden or anyone else in the Department of Public Safety and Correction.

## Deliberate Indifference

43. The failure of the administration to provide an adequate staff and/or qualified

7.

personnel. On several occasion nurses acknowledge the pain and swelling in my leg but the doctor refuse to examine it, assuming it was fluid

44. On several occasion plaintiff had to be put on a cart to be push to pill call and chow.

45. Plaintff was in so much pain he could not stand in line for chow, it had to be brought to him.

46. On numerous occasion after being made aware that something was seriously wrong with plaintiff leg Dr. Pancho refuse to examine or take blood from plaintiff.

## Claim for Relief

47. The failure of wardens Wilkinson and John D. Ferguson to provide medical personnel trained to meet the need of prisoner medical condition constitute cruel and unusal punishment in violation of the Eight Amendment of the United States Constitution.

48. The failure of Dr. Pacho to examine plaintiff leg and take blood test after nemurous complaints from plaintiff and staff that plaintiff leg is in bad shape constitute denial of medical

8.

Need in violation of the Eight Amendment to the United States Constitution.

49. The failure of Mona Heyse to process plaintiff's ARP denied him a liberty interest created by the state and federal Constitution denied the plaintiff the due process of law in violation of the Fourteenth Amendment to the United States Constitution.

## Relief Requested

A. Issue a declaratory judgment stating that:

1. The denial of Dr. Pacho to examine Plaintiff foot and take blood work to see why it was not going down violated Plaintiff's right under the Eight Amendment to the United States Constitution.

2. Defendant Tim Wilkinson and John D. Ferguson failure to provide competent doctors to treat prisoner serious medical need constitute cruel and unusual punishment under the Eight Amendment to the United States Constitution.

3. Defendant Mona Heyse, failure to process plaintiff ARP denied him a liberty interest, in violation of plaintiff due

8

process under the Fourteenth Amendment.

B. Issue an Injunction ordering defendants to:

1. immediately arrange for grievances to be process according to Department Regulation No. B-05-005.

2. Immediately arrange for the plaintiff and Winn's prisoners to have adequate medical treatment.

3. Immediately arrange for the plaintiff and Winn's prisoner to be examine, Ex-rays and Blood Work upon serious injury.

C. Award Compensatory Damages in the following amounts.

1. $500,000 jointly and severally against defendants Tim Wilkinson and John L. Ferguson for failing to provide an adequate doctor causing the amputation of his leg.

2. $300,000 against doctor Pacho for failing to examine, take ex-rays and Blood Work failing to provide adequate medical care to plaintiff.

3. $200,000 against Mona Heyse for denying plaintiff Liberty Interest

9.

denying him due process under the Fourteenth Amendment.

D. Grant such other relief as it may appear that plaintiff is entitle.

Filed this 11th day of January 2010

Respectfully Submitted
Percy Anderson
Percy Anderson
Infirmary Ward
Winn Correctional Center
P.O. Box 1260
Winnfield, La 71483-1260

Percy Anderson # 841029
Winn Corr. Ct. I-W07
P.O. Box 260
Winnfield La 71483-1260

Western District of Louisiana
Alexandria Division
105 Post Office Bldg Murray St.
P.O. Box 1269
Alexandria La 71309-1269

RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE _____
BY _____

JAN 13
USPS 71483

U.S. POSTAGE PAID
WINNFIELD, LA
71483
JAN 13, '10
AMOUNT
$0.00
0045671-06