RECEIVED
IN ALEXANDRIA, LA

MAR 5 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| PERCY ANDERSON | CIVIL ACTION NO. 1:10-CV-0063 |
| LA. DOC #84029 | |
| VS. | SECTION P |
| | JUDGE DRELL |
| TIM WILKINSON, WARDEN, ET AL. | MAGISTRATE JUDGE KIRK |

### REPORT RECOMMENDING DISMISSAL OF SOME BUT NOT ALL CLAIMS AND DEFENDANTS

Pro se plaintiff Percy Anderson, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 14, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Winn Correctional Center (WCC), Winnfield, Louisiana, and he claims that he was denied prompt and appropriate medical care. Plaintiff prays for declaratory judgment, injunctive relief, and monetary damages from the defendants – Warden Tim Wilkinson, Dr. Pachecho[1], Mona Heyse (WCC's Quality Assurance Officer), and John D. Ferguson, the Chief Executive Officer of the corporation which owns and manages WCC. This matter has been referred to the undersigned

---

[1] Plaintiff identifies WCC's physician as "Dr. Pacho."

for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the claims against defendants Wilkinson, Ferguson, and Heyse be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted. Plaintiff's claims against Dr. Pacheco will survive this initial review and service of process will be mandated in a separate order.

### Background

According to plaintiff, he began to experience pain and swelling in his leg sometime in June 2009. He was examined by Dr. Pacheco who opined that plaintiff's problems were caused by excess fluid. Pacheco prescribed Motrin for pain and another medication to reduce the fluid.[2]

In July the swelling got progressively worse. On some unspecified date in July, Nurse Jones observed this condition at pill call and requested another examination. On the same date,

---

[2] Swelling or "edema" is caused by excess fluid in the body's tissues. It usually occurs in the feet, ankles and legs and may be caused by eating too much salt, sunburn, heart failure, kidney disease, liver problems, medication or standing or walking too much when the weather is warm. To keep swelling down, health care providers may recommend that the patient keep his legs raised when sitting, wear support stockings, limit how much salt is consumed or take medication called a diuretic or "water pill."

See Medline Plus, Encyclopedia, A service of the U.S. National Library of Medicine and the National Institutes of Health online at http://www.nlm.nih.gov/medlineplus/edema.html

Nurse Wood arranged to have plaintiff examined by Dr. Pacheco who provided additional fluid medication.

One week later, when his leg and foot remained swollen, Nurse Jones advised plaintiff that he needed to be hospitalized so that diagnostic tests could be performed. Pacheco disagreed and ordered an injection of Lasix® for the fluid.[3] Plaintiff received the medication and remained in the infirmary overnight.

On July 22, 2009 plaintiff advised a Corrections Officer that he could not walk. Ms. Triplett, Ms. Coleman, and Mrs Hardwell approached plaintiff, examined his foot, and observed a black liquid with a strong odor oozing from plaintiff's foot. Plaintiff was taken immediately to the infirmary and then transferred to the LSU Medical Center.

Plaintiff was examined by a physician who concluded that four of plaintiff's toes needed to be amputated. After that operation was completed, the physician observed that part of plaintiff's leg was also gangrenous and was in need of

---

[3] Plaintiff referred to the medication as a "lace shot." It is believed that he is referring to Lasix® or furosemide - a medication used to reduce swelling and fluid retention caused by various medical problems, including heart or liver disease. It causes the kidneys to get rid of unneeded water and salt from the body into the urine. Lasix® is administered by injection when a prompt and effective diuresis is required. <u>Medline Plus</u>, Drugs & Supplements, A service of the U.S. National Library of Medicine and the National Institutes of Health online at
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682858.html

amputation. According to plaintiff, this physician advised that earlier treatment may have resolved the problem without the need for amputation. Further, the physician advised that had plaintiff waited another day or two to obtain treatment, he could have died as a result of the condition.[4]

On September 29, 2009 plaintiff filed a grievance against Dr. Pacheco charging him with deliberate indifference. On October 1, 2009, Ms. Heyse, the quality assurance manager at WCC rejected the grievance because it was not in plaintiff's handwriting.

Plaintiff filed the instant complaint on January 14, 2010. He alleged that Dr. Pacheco was deliberately indifferent to his serious medical needs because although he was alerted to plaintiff's condition, he "...refuse[d] to examine or take blood from plaintiff..." and assumed instead that plaintiff's

---

[4] Gangrene is the death of tissue in part of the body. Gangrene happens when a body part loses its blood supply. This may happen from injury, an infection, or other causes. You have a higher risk for gangrene if you have a serious injury, blood vessel disease (such as arteriosclerosis, also called hardening of the arteries, in your arms or legs), diabetes, suppressed immune system (for example, from HIV or chemotherapy), or surgery. The symptoms depend on the location and cause of the gangrene. If the skin is involved, or the gangrene is close to the skin, the symptoms may include discoloration (blue or black if skin is affected; red or bronze if the affected area is beneath the skin), foul-smelling discharge, loss of feeling in the area (which may happen after severe pain in the area). Medline Plus, Encyclopedia, etc. at http://www.nlm.nih.gov/medlineplus/ency/article/007218.htm

condition was caused by fluid.

He faulted Mona Hayse for violating LDOC regulations and interfering with his right to participate freely in the grievance procedure.

He faulted Warden Wilkinson and Mr. Ferguson, the Chief Executive Officer of the corporation which runs WCC for their failure to provide competent or adequate doctors to treat prisoner's serious medical needs.

### Law and Analysis

*1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). Ali v. Higgs, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. Booker v. Koonce, 2 F.3d 114, 115 (5th Cir.1993); see, Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a

claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. Wilson v. Barrientos, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. Green v. McKaskle, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts

to the complaint." <u>Macias v. Raul A. (Unknown) Badge No. 153</u>, 23 F.3d at 97.

Plaintiff has provided a detailed factual description of the events leading up to his hospitalization in July 2009. He has also alleged with specificity how each of the four named defendants violated his Constitutional rights. Given the detailed and complete nature of the pleadings, further amendment is unnecessary.

### 2. *Supervisory Liability - Wilkinson and Ferguson*

Plaintiff faults Warden Wilkinson and CEO Ferguson for failing to provide a competent or adequate doctor which failure ultimately resulted in the amputation of plaintiff's leg.

It appears that his claims against Wilkinson and Ferguson are based solely upon their status as supervisory personnel - Wilkinson as Warden, and Ferguson as CEO of WCC's corporate entity.

However, a subordinate's fault does not result in supervisory liability under § 1983. <u>Champagne v. Jefferson Parish Sheriff's Office</u>, 188 F.3d 312, 314 (5th Cir.1999). This is so because 42 U.S.C. §1983 does not create supervisory or *respondeat superior* liability. <u>Alton v. Tex. A & M Univ.</u>, 168 F.3d 196, 200 (5th Cir.1999) ("Only the direct acts or omissions

of government officials, not the acts of subordinates, will give rise to individual liability under § 1983."); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir.1987) ("Under section 1983 supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); Douthit v. Jones, 641 F.2d 345, 346 (5th Cir.1981) (*per curiam*).

Supervisory officials may be held liable only if they were personally involved in the acts causing the deprivation of the prisoner's constitutional rights, or, if there is a sufficient causal connection between the official's act and the constitutional violation sought to be redressed. Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir.1987); Douthit v. Jones, 641 F.2d 345, 346 (5th Cir.1981)(*per curiam*).

Plaintiff has alleged no personal involvement on the part of Wilkinson and Ferguson and, he has showed no causal connection between any act or omission by either Wilkinson or Ferguson and the alleged constitutional violation. The only fault alleged is the conclusory allegation that these supervisors failed to provide either a competent or an adequate physician. However, before plaintiff may recover against these supervisory officials, he must show that they were deliberately indifferent to his plight, and proof of more than one instance

of improper supervision resulting in a constitutional violation is required before such lack of supervision constitutes deliberate indifference. <u>Snyder v. Trepagnier</u>, 142 F.3d 791, 798-99 (5th Cir.1998); <u>Belt</u>, 828 F.2d at 304-305. The plaintiff must demonstrate a pattern of similar violations. <u>Snyder</u>, 142 F.3d at 798. Finally, the inadequacy of training or supervision must be obvious and obviously likely to result in harm. <u>Snyder v. Trepagnier</u>, 142 F.3d at 799; <u>Thompson v. Upshur County, TX</u>, 245 F.3d 447, 459 (5th Cir. 2001).

Plaintiff alleged neither personal fault nor any basis for supervisor liability against either Warden Wilkinson or CEO Ferguson; therefore, his claims, with regard to these defendants, lack an arguable basis in law and in fact and are frivolous. <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### 3. *The Right to a Grievance Procedure - Mona Heyse*

Plaintiff faults Ms. Heyse because she arbitrarily and capriciously rejected plaintiff's administrative remedies grievance in violation of LDOC regulations. Plaintiff maintains that the problems he encountered in attempting to obtain redress through the prison grievance system violated his right to Due

Process as guaranteed by the Fourteenth Amendment.

Plaintiff's due process argument is frivolous. In <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, as is alleged here, does not violate constitutional *minima*. See <u>Taylor v. Cockrell</u>, 92 Fed.Appx. 77, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (citing <u>Sandin</u>, *supra*, and finding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); <u>Geiger v. Jowers</u>, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also <u>Jones v. North Carolina Prisoners' Labor Union, Inc</u>., 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)(Burger, C.J., concurring)(applauding the institution of grievance procedures by prisons but not suggesting that such procedures

are constitutionally required); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)*(concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Since the Fourteenth Amendment does not provide a constitutionally protected right to a prison grievance procedure, plaintiff's due process claim is frivolous.

## 4. *Conclusion and Recommendation*

Plaintiff has failed to plead or establish liability on the part of the supervisory defendants, Warden Wilkinson and CEO Ferguson and those claims should be dismissed as frivolous. Further, since plaintiff has no Constitutionally guaranteed right to participate in the prison grievance procedure, his claims against Mona Heyse should also be dismissed as frivolous.

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights claims against defendants **WILKINSON, FERGUSON, AND HEYSE** be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following**

the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglas v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Alexandria, Louisiana, March 5, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

13