RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 2/12/14

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| PERCY ANDERSON,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 1:10-CV-00063 |
| VERSUS | |
| TIM WILKINSON, et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983 by pro se plaintiff Percy Anderson ("Anderson") on January 14, 2010 (Doc. 1). The named defendants are Tim Wilkinson (warden of the Winn Correctional Center ("WCC") in Winnfield, Louisiana), Dr. Pacheco (a medical doctor formerly employed at the WCC), and John D. Ferguson (president and CEO of Corrections Corporation of America, the operator of the WCC).[1] The defendants are sued in both their official and individual capacities. For relief, Anderson asks for an injunction for Anderson and other WCC inmates to have adequate medical care, to have grievances processed properly, and for monetary damages (Doc. 1).

Anderson contends that, while he was incarcerated in WCC in June and July 2009, he was denied adequate medical which resulted

---

[1] Anderson also named Mona Heyse as a defendant, but that claim was dismissed (Doc. 13).

in the amputation of four toes and, later, part of his leg, despite the fact that he went to the WCC infirmary numerous times for medical care (Doc. 1).

Anderson contends that, while he was incarcerated in the WCC in June 2009, he sought medical care for pain and swelling in his leg; Dr. Pacheco diagnosed fluid in Anderson's leg and prescribed Motrin and fluid pills (Doc. 10). Anderson contends the condition of his leg worsened until he had difficulty walking in mid-July 2009 (Doc. 1). Nurse Jones saw Anderson's swollen leg and foot, and had him go to the infirmary that day, but Dr. Pacheco again prescribed fluid pills (Doc. 1). One week later, Nurse Jones saw Anderson's leg and foot were swollen more and told him he needed to go to the hospital (Doc. 1). However, Dr. Pacheco ordered a lasix shot to Anderson and kept him in the infirmary overnight (Doc. 1). By July 22, 2009, Anderson was unable to walk and malodorous black liquid was oozing out of his foot (Doc. 1). Unit Manager Hardwell called the infirmary, which transferred Anderson to the LSU Medical Center immediately (Doc. 1). At LSUMC, gangrene was diagnosed, four of Anderson's toes were amputated immediately, and part of his leg was later amputated (Doc. 1). Anderson contends the doctor at LSUMC told him his leg could have been saved if he had been taken to LSUMC earlier, and that he would have died if he had waited one or two days longer (Doc. 1).

The defendants answered the complaint and requested a jury

trial (Doc. 14, 20), and filed a statement of issues for trial (Doc. 21). Defendants also filed a motion to dismiss or for summary judgment (Doc. 42), which Anderson did not oppose.

Defendants' motion (Doc. 42) is accompanied by an affidavit and documentary evidence. In accordance with Fed.R.Civ.P. rule 12(b), since defendants' motion is accompanied by evidence outside of the pleadings which the court will consider, the motion (Doc. 42) will be considered as a motion for summary judgment only. Defendants' motion (Doc. 42) is now before the court for disposition.

## Law and Analysis

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts

submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th

Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Exhaustion

Defendants contend Anderson failed to exhaust his administrative remedies. Defendants show that Anderson filed only one ARP, which named only Dr. Pacheco (Doc. 42). Defendants further show that Anderson's ARP was rejected because it was not written in his own handwriting and cited violations of the Louisiana Department of Corrections ("LA-DOC") disciplinary rules against inmates possessing the legal work of other inmates and against performing legal work for other inmates. See 22 La. A.D.C. Pt. I, § 363.[2]

---

[2] 22 La. A.D.C. Pt I, § 363 of the disciplinary rules provides in pertinent part:
> X. (13). purchasing or trading for offender legal or other services. Performing legal work for another offender or being in possession of another offender's legal work when not assigned as a counsel substitute or when not approved by the warden. (It is a violation for any offender to give or receive anything of value relative to the provision of paralegal services.) An offender may not perform or be in possession of staff legal work;... .

The statement that Anderson's grievance was rejected for violation of disciplinary rules was improper; that is not an authorized reason for rejection of a grievance by a screening officer. Moreover, violation of disciplinary rules is dealt with through the disciplinary procedures set forth in 22 La.ADC Pt. I, §§ 341, et seq. ("Disciplinary Rules and Procedures for Adult Offenders"). Those rules and procedures require notice and a hearing before a neutral decision maker, and must comport with the minimum requirements of due process. Punishment by the grievance screening officer, without notice, proof and opportunity to be heard, does not comport with the statutory disciplinary procedures or the minimum requirements of due process. See 22 La. ADC Pt. I, §§ 353-359.

The grievance procedures applicable in Louisiana Department of Corrections facilities are set forth at 22 La. A.D.C. Pt. 1, § 325. Section 325(I)(1)(f) states that a grievance may be rejected by the screening officer because "[t]he request was not written by the offender and a waiver was not approved." Therefore, Anderson's grievance was rejected for a reason authorized in the statute.

Defendants argue that Anderson failed to filed a second step grievance and, therefore, failed to exhaust his administrative remedies. However, since Anderson's first step grievance was rejected by the screening officer, Anderson did not have to pursue that grievance to the second step. See 22 La.A.D.C. Pt. 1, § 325(I)(a)(i),(b) (only grievances which are accepted into the process need to proceed through both steps). Defendants' argument is meritless.

Moreover, Section 325(F)(3)(a)(viii) states that, prior to filing a grievance in federal or state court, the offender must exhaust all administrative remedies, and that exhaustion occurs:

(a) when the relief requested has been granted;
(b) when the second step response has been issued; or
(c) when the grievance has been screened and rejected for one of the reasons specified in Subsection I, Grievance Screening.

Therefore, upon rejection of Anderson's grievance by the screening officer for the reason specified in Subsection (I)(1)(f), Anderson's administrative remedies were deemed exhausted under Section 325(F).

Finally, defendants argue that Anderson did not file grievances against Warden Wilkinson and CEO Ferguson, so his claims against them are not exhausted. However, exhaustion is not per se inadequate simply because an individual later sued was not named in the grievance that was filed. The lower court must determine the sufficiency of the exhaustion in such cases. Jones v. Bock, 549 U.S. 199, 219, 127 S.Ct. 910, 923 (2007).

Under Louisiana law, a grievance is defined as "a written complaint by an offender on the offender's own behalf regarding a policy applicable within an institution, a condition within an institution, an action involving an offender of an institution or an incident occurring within an institution." 22 La. A.D.C. Pt. 1, § 325(E). Since Anderson complains of an incident, defendants' failure to provide him with adequate medical care for his serious medical need, his grievance must necessarily have alleged facts describing the incident. The gist of Anderson's grievance is that he was not provided with adequate medical care for his gangrene while at WCC in 2009, and he necessarily names Dr. Pacheco as having been involved in the incident.

In dealing with defendants' exhaustion defense, the court is only concerned with the adequacy of Anderson's grievance to apprise the prison officials at WCC with the facts of the incident and the reasons why he believed the medical care provided him at WCC, for his gangrenous foot and leg, was inadequate. Since Anderson's

7

grievance sets forth the facts of the incident and reasons why he is aggrieved, Anderson did not need to list all possible persons who could be named as defendants in a future lawsuit. The purpose of a grievance is to enable an offender to seek formal review of a complaint relating to most aspects of his incarceration, 22 La. A.D.C. Pt. 1, § 325(C), not to put specific prison officials on notice that they may be sued in the future. See <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004)("the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation"). Since Anderson's grievance was adequate to apprise the prison officials of his medical care complaints, Anderson's claim, for inadequate medical care, against all defendants are exhausted.

Therefore, defendants' motion for summary judgment in favor of CEO Ferguson, and Warden Wilkinson for failure to name them in his grievance should be denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 42) should be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _11th_ day of February 2014.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE